# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### NORTHEASTERN DIVISION

CHRISTOPHER BROWN,      )
                                  )
      Plaintiff,           )
                                  )
v.                                )
                                )   Case No.: 5:17-cv-02010-SGC
SOCIAL SECURITY         )
ADMINISTRATION, Commissioner,  )
                                )
      Defendant.       )

## MEMORANDUM OPINION[1]

The plaintiff, Christopher Brown, appeals from the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Brown timely pursued and exhausted his administrative remedies, and the Commissioner's decision is ripe for review pursuant to 42 U.S.C §§ 405(g) and 1383(c)(3). For the reasons discussed below, the Commissioner's decision is due to be reversed and remanded.

## I. Procedural History

Brown completed the eighth grade and has previously worked as a diesel mechanic. (Tr. at 179). In his applications for DIB and SSI, Brown alleged he

---

[1] The parties have consented to the exercise of full dispositive jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c). (Doc. 13).

became disabled on August 17, 2014, as a result of neck problems, knee problems, back problems, arthritis, depression, right eye blindness, and "legs." (*Id.* at 173, 178). After his claims were denied, Brown requested a hearing before an administrative law judge ("ALJ"). (*Id.* at 92). Following a hearing, the ALJ denied Brown's claims. (*Id.* at 18-27). Brown was fifty-one years old when the ALJ issued his decision. (*Id.* at 27, 173). After the Appeals Council denied review of the ALJ's decision (*id.* at 1-3), that decision became the final decision of the Commissioner, *see Frye v. Massanari*, 209 F. Supp. 2d 1246, 1251 (N.D. Ala. 2001 (citing *Falge v. Apfel*, 150 F.3d 1320, 1322 (11th Cir. 1998)). Thereafter, Brown commenced this action. (Doc. 1).

## II. Statutory and Regulatory Framework

To establish eligibility for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 416(i)(1)(A), 423(d)(1)(A); *see also id.* at § 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). Furthermore, a DIB claimant must show he was disabled between his alleged initial onset date and his date last insured. *Mason v. Comm'r of Soc. Sec.*, 430 F. App'x 830, 831 (11th Cir. 2011) (citing *Moore v. Barnhart*, 405 F.3d 1209, 1211 (11th Cir. 2005); *Demandre*

*v. Califano*, 591 F.2d 1088, 1090 (5th Cir. 1979)). The Social Security Administration ("SSA") employs a five-step sequential analysis to determine an individual's eligibility for disability benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

First, the Commissioner must determine whether the claimant is engaged in "substantial gainful activity." *Id.* at §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). "Under the first step, the claimant has the burden to show that [he] is not currently engaged in substantial gainful activity." *Reynolds-Buckley v. Comm'r of Soc. Sec.*, 457 F. App'x 862, 863 (11th Cir. 2012). If the claimant is engaged in substantial gainful activity, the Commissioner will find the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i) and (b), 416.920(a)(4)(i) and (b). At the first step, the ALJ determined Brown meets the Social Security Administration's insured status requirements through December 31, 2019, and has not engaged in substantial gainful activity since his alleged onset date of August 17, 2014. (Tr. at 20).

If the claimant is not engaged in substantial gainful activity, the Commissioner must next determine whether the claimant suffers from a severe physical or mental impairment or combination of impairments that has lasted or is expected to last for a continuous period of at least twelve months. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment "must result from anatomical, physiological, or psychological abnormalities which can be shown by

medically acceptable clinical and laboratory diagnostic techniques." Furthermore, it "must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [the claimant's] statement of symptoms." *Id.* at §§ 404.908, 416.908; *see also* 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D). An impairment is severe if it "significantly limits [the claimant's] physical or mental ability to do basic work activities . . . ." 20 C.F.R. §§ 404.1520(c), 416.920(c).[2] "[A]n impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984); *see also* 20 C.F.R. §§ 404.1521(a), 416.921(a). A claimant may be found disabled based on a combination of impairments, even though none of the individual impairments alone is disabling. 20 C.F.R. §§ 404.1523, 416.923. The claimant bears the burden of providing medical evidence demonstrating an impairment and its severity. *Id.* at §§ 404.1512(a) and (c), 416.912(a) and (c). If the claimant does

---

[2] Basic work activities include:

> (1) [p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) [c]apacities for seeing, hearing, and speaking; (3) [u]nderstanding, carrying out, and remembering simple instructions; (4) [u]se of judgment; (5) [r]esponding appropriately to supervision, co-workers and usual work situations; and (6) [d]ealing with changes in a routine work setting.

20 C.F.R. §§ 404.1521(b), 416.921(b).

not have a severe impairment or combination of impairments, the Commissioner will find the claimant is not disabled. *Id.* at §§ 404.1520(a)(4)(ii) and (c), 416.920(a)(4)(ii) and (c). At the second step, the ALJ determined Brown has the following severe impairments: degenerative disc disease of the lumbar spine, osteoarthritis, and right eye blindness. (Tr. at 20).

If the claimant has a severe impairment or combination of impairments, the Commissioner must then determine whether the impairment meets or equals one of the "Listings" found in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *see also id.* at §§ 404.1525-26, 416.925-26. The claimant bears the burden of proving his impairment meets or equals one of the Listings. *Reynolds-Buckley*, 457 F. App'x at 863. If the claimant's impairment meets or equals one of the Listings, the Commissioner will find the claimant is disabled. 20 C.F.R §§ 404.1520(a)(4)(iii) and (d), 416.920(a)(4)(iii) and (d). At the third step, the ALJ determined Brown does not have an impairment or combination of impairments that meets or medically equals the severity of one of the Listings. (Tr. at 21).

If the claimant's impairment does not meet or equal one of the Listings, the Commissioner must determine the claimant's residual functional capacity ("RFC") before proceeding to the fourth step. *Id.* at §§ 404.1520(e), 416.920(e); *see also id.* at §§ 404.1545, 416.945. A claimant's RFC is the most he can do despite his

impairments. *See id.* at §§ 404.1545(a)(1), 416.945(a)(1). At the fourth step, the Commissioner will compare an assessment of the claimant's RFC with the physical and mental demands of the claimant's past relevant work. *Id.* at §§ 404.1520(a)(4)(iv) and (e), 404.1560(b), 416.920(a)(4)(iv) and (e), 416.960(b). "Past relevant work is work that [the claimant] [has] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it." *Id.* at §§ 404.1560(b)(1), 416.960(b)(1). The claimant bears the burden of proving his impairment prevents him from performing his past relevant work. *Reynolds-Buckley*, 457 F. App'x at 863. If the claimant is capable of performing his past relevant work, the Commissioner will find the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1560(b)(3), 416.920(a)(4)(iv), 416.960(b)(3).

Before proceeding to the fourth step, the ALJ determined Brown has the RFC to perform light work[3] with the following limitations: although he can frequently balance, he cannot kneel, crouch, crawl, or climb ladders, ropes, or scaffolds; he can only occasionally stoop and climb ramps and stairs; he must avoid concentrated exposure to cold and vibration; and he must avoid all exposure to hazardous machinery and unprotected heights. (Tr. at 22-25). At the fourth

---

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. §§ 404.1567(b) and 416.967(b).

step, the ALJ determined Brown is unable to perform his past relevant work. (*Id.* at 25).

If the claimant is unable to perform her past relevant work, the Commissioner must finally determine whether the claimant is capable of performing other work that exists in substantial numbers in the national economy in light of the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v) and (g)(1), 404.1560(c)(1), 416.920(a)(4)(v) and (g)(1), 416.960(c)(1). If the claimant is capable of performing other work, the Commissioner will find the claimant is not disabled. *Id.* at §§ 404.1520(a)(4)(v) and (g)(1), 416.920(a)(4)(v) and (g)(1). If the claimant is not capable of performing other work, the Commissioner will find the claimant is disabled. *Id.*

At the fifth step, considering Brown's age, education, work experience, and RFC, the ALJ determined there are jobs that exist in significant numbers in the national economy that Brown can perform, such as those of bottling line attendant, marker, and mail clerk. (Tr. at 25-26). Therefore, the ALJ concluded Brown is not disabled. (*Id.* at 26).

## III. <u>Standard of Review</u>

Review of the Commissioner's decision is limited to a determination of whether that decision is supported by substantial evidence and whether the Commissioner applied correct legal standards. *Crawford v. Comm'r of Soc. Sec.*,

363 F.3d 1155, 1158 (11th Cir. 2004). A district court must review the Commissioner's findings of fact with deference and may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007); *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). Rather, a district court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (internal citations omitted). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.* A district court must uphold factual findings supported by substantial evidence, even if the preponderance of the evidence is against those findings. *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

A district court reviews the Commissioner's legal conclusions *de novo*. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). "The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## IV. <u>Discussion</u>

On appeal, Brown argues (1) the ALJ failed to properly evaluate his statements regarding the intensity, persistence, and limiting effects of his pain; (2) the ALJ failed to properly evaluate the opinion of Dr. Justin Ross Hutto, who performed a consultative examination of Brown on January 17, 2015; and (3) the ALJ's determination he has the RFC to perform a limited range of light work is not supported by substantial evidence. (Doc. 10).

### A. Evaluation of Pain Testimony

When a claimant attempts to establish disability through his own testimony of pain, he must show " 'evidence of an underlying medical condition' and either 'objective medical evidence that confirms the severity of the alleged pain arising from that condition' or 'that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.'" *Taylor v. Acting Comm'r of Soc. Sec. Admin.*, 2019 WL 581548, at *2 (11th Cir. 2019) (quoting *Dyer*, 395 F.3d at 1210); *see also* 20 C.F.R. §§ 404.1529, 416.929; SSR 16-3p. An ALJ may discredit a claimant's testimony regarding his pain provided she " 'clearly articulate[s] explicit and adequate reasons' for doing so." *Taylor*, 2019 WL 581548, at *2 (quoting *Dyer*, 395 F.3d at 1210).

In rescinding Social Security Ruling ("SSR") 96-7p, which instructed an ALJ to assess a claimant's "credibility" under certain circumstances, the SSA

clarified a "subjective symptom evaluation is not an examination of an individual's character." *See* SSR 96-7p; SSR 16-3p. Under SSR 16-3p, which replaced SSR 96-7p, an ALJ evaluates the consistency of a claimant's subjective symptoms with all of the evidence in the administrative record. SSR 16-3p; *see also Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1307-08 (11th Cir. 2018) (discussing rescission of SSR 96-7p by SSR 16-3p).[4]

During the hearing, Brown testified he is in constant pain, primarily due to problems with his knees and back. (Tr. at 41). He rated the pain at seven or eight on an increasing pain scale of one to ten on a good day and at ten on a bad day. (*Id.*). In his function report, Brown stated he can do very little during the day because of his knees and back, and he testified he spends approximately four hours between 8:00 A.M. and 5:00 P.M. reclining with ice packs on his knees. (*Id.* at 47, 202).

The ALJ determined Brown's medically determinable impairments could reasonably be expected to produce his alleged symptoms – namely, right eye blindness and back and bilateral knee pain that made it difficult to lift, squat, bend, stand, reach, walk, kneel, and climb stairs – but that Brown's statements

---

[4] SSR 16-3p applies to disability determinations made on or after March 28, 2016. *See Contreras-Zambrano v. Soc. Sec. Admin., Comm'r*, 724 F. App'x 700, 704 (11th Cir. 2018) (noting the version of SSR16-3p republished in October 2017 clarified SSA's adjudicators would apply SSR 16-3p to all determinations made on or after March 28, 2016, and that SSA expected federal courts to use version of rule in effect at time SSA issued decision under review). The ALJ issued the decision under review on December 14, 2016. (Tr. at 27).

concerning the intensity, persistence, and limiting effects of the symptoms are not entirely consistent with the medical and other evidence. (Tr. at 22). The ALJ articulated the following reasons for discrediting Brown's testimony regarding his pain: (1) Brown infrequently sought medical treatment for his impairments, (2) Brown's reported daily activities and physical abilities are inconsistent with a disabling level of impairment, (3) the record lacks a treating physician's opinion Brown is disabled, and (4) objective medical evidence is inconsistent with a disabling level of impairment. (Tr. at 23-25).

### 1. Infrequent Attempts to Seek Medical Treatment

The ALJ noted Brown sought medical treatment for his impairments on only one occasion during the relevant period, an appointment with Dr. Punuru R. Reddy on October 29, 2014. (*Id.* at 23, 25).

Failure to seek treatment or comply with recommended treatment is an appropriate consideration in evaluating a claimant's symptoms, including pain. *See* SSR 16-3p (noting "[p]ersistent attempts to obtain relief of symptoms, such as increasing dosages and changing medications, trying a variety of treatments, referrals to specialists, or changing treatment sources may be an indication that an individual's symptoms are a source of distress and may show that they are intense and persistent"); *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003) (citing *Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988)); *Brown v. Comm'r of*

*Soc. Sec.*, 425 F. App'x 813, 817 (11th Cir. 2011) (citing SSR 96-7p). However, an ALJ cannot draw an adverse inference from a claimant's infrequent medical treatment without considering explanations for the infrequency. *See* SSR 16-3p (noting ALJ may need to contact claimant about lack of treatment or, during administrative proceeding, ask claimant why he has not sought or complied with treatment); *Brown*, 425 F. App'x at 817 (citing SSR 96-7p). For example, poverty excuses a claimant's failure to seek treatment or comply with recommended treatment. *See* SSR 16-3p (identifying claimant's ability to afford treatment and access to free or low-cost medical services as considerations relevant to evaluating claimant's treatment history); *Ellison*, 355 F.3d at 1275 (" 'poverty excuses noncompliance [with recommended medical treatment]'" (quoting *Dawkins*, 848 F.2d at 1213)); *Brown*, 425 F. App'x at 817 (paraphrasing the same).

The ALJ's decision includes no discussion of possible reasons why Brown did not seek medical treatment more frequently. Moreover, when asked by his attorney during the hearing why he had not sought medical treatment more frequently, Brown responded that no one will see him without insurance, which he does not have. (Tr. at 41). Notwithstanding Brown's proferred explanation, the ALJ did not address it. Accordingly, the ALJ's reliance on Brown's infrequent attempts to seek medical treatment for purposes of discrediting his testimony regarding his pain was in error. *See Dawkins* at 848, F.2d at 1213-14 (remanding

12

decision where ALJ explicitly noted claimant's noncompliance with recommended medical treatment but did not consider claimant's poverty as a good excuse); *Kinsley v. Berryhill*, 2018 WL 4386007, at *5 (N.D. Ala. Sept. 14, 2018) (holding ALJ should not have used claimant's failure to seek treatment from free clinic as basis for evaluating credibility of statements regarding severity of pain without considering why claimant did not pursue this option).

The Commissioner concedes the error but argues it was harmless because the ALJ articulated independently adequate reasons for discrediting Brown's testimony regarding his pain. (Doc. 11 at 8). *See Ellison*, 355 F.3d at 1275 (holding ALJ's failure to consider claimant's ability to afford recommended medical treatment did not constitute reversible error where ALJ discredited claimant's allegations of disability based primarily on factors other than noncompliance with that treatment); *Beegle v. Soc. Sec. Admin, Comm'r*, 483 F. App'x 483, 487 (11th Cir. 2012) (citing *Ellison* for the general proposition). Because the other reasons the ALJ articulated for discrediting Brown's testimony are either unsupported by substantial evidence or inadequate to support a negative credibility determination, this argument is unavailing.

### 2. Daily Activities

The ALJ noted Brown's reported daily activities (i.e., driving, cooking, cleaning, doing laundry, and grocery shopping) were not limited to the extent his

alleged symptoms would suggest and that Brown's testimony during the hearing he can lift up to fifteen pounds for one-third of a work day reinforces this finding. (Tr. at 25).[5]

Participation in daily activities of short duration does not necessarily disqualify a claimant from disability. *Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir. 1997). However, an ALJ may consider a claimant's daily activities when evaluating his subjective symptoms. *See Hoffman v. Astrue*, 259 F. App'x 213, 219 (11th Cir. 2007) (noting *Lewis'* holding does not mean it is improper for an ALJ to consider a claimant's daily activities at all); 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i) (identifying claimant's daily activities as one factor relevant to evaluating symptoms); SSR 16-3p (same). Although it was proper for the ALJ to consider Brown's daily activities in evaluating his pain testimony, the ALJ's conclusion those activities discredited Brown's testimony is not supported by substantial evidence.

The ALJ's statement of Brown's daily activities omits Brown's limiting

---

[5] The ALJ relied on the opinion of Dr. Dallas M. Russell, who performed a consultative examination of Brown on July 21, 2016, to support the component of her RFC assessment regarding Brown's lifting and carrying abilities. (Tr. at 24, 300-13). The undersigned notes the ALJ did not rely on Dr. Russell's opinion to discredit Brown's testimony regarding the limitations of his impairments. Instead, one reason the ALJ stated for relying on Dr. Russell's opinion was its consistency with Brown's testimony regarding his lifting and carrying abilities. (*Id.* at 24). Moreover, the ALJ discounted the remainder of Dr. Russell's opinion. (*Id.*). In other words, because the ALJ credited only that portion of Dr. Russell's opinion she found to be consistent with Brown's testimony, the opinion was not a basis for discrediting Brown's testimony.

description of those activities. In his function report, Brown stated generally that he is able to do very little because of his knee and back. (Tr. at 202). Although he reported he can clean and do laundry, he noted these household chores take him all day to complete. (*Id.* at 204). While he reported he can shop for groceries, during the hearing he elaborated by noting he uses a motorized shopping cart to pick up a few items but does not shop for "complete groceries." (*Id.* at 45-46, 205). He reported he can prepare sandwiches and frozen meals but that it takes him longer than before the onset of his symptoms because he cannot stand for a long period of time. (*Id.* at 204). He testified he could probably lift and carry between eight and fifteen pounds up to a third of a work day but that he did not know if he could do so every day because of his pain. (*Id.* at 44).

The ALJ's incomplete characterization of Brown's daily activities does not constitute substantial evidence on which to discredit Brown's testimony regarding his pain. *See Horton v. Barnhart*, 469 F. Supp. 2d 1041, 1047 (N.D. Ala. 2006) ("The ALJ's selective description of the plaintiff's activities is disingenuous, as he accepts her listing of her activities, but not her limiting description of them."); *Iheanacho v. Berryhill*, 2018 WL 4680173, at *8-9 (N.D. Ala. Sept. 28, 2018) (holding substantial evidence did not support ALJ's finding that claimant's daily activities diminished her credibility where ALJ's review of those activities was incomplete).

### 3. Absence of Treating Physician's Disability Opinion

The ALJ noted the record lacks a treating physician's opinion Brown is disabled. (Tr. at 24-25). The Eleventh Circuit has suggested that where a treating physician's silence regarding a claimant's disability is equally susceptible to competing inferences – either that the claimant is disabled or that the claimant is not disabled – no inference should be made. *See Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988) (rejecting argument that because claimant's treating physicians only noted claimant could not return to past work, Commissioner's finding claimant could perform light work was uncontradicted); *see also Grier v. Colvin*, 117 F. Supp. 3d 1335, 1348-49 (N.D. Ala. 2015) (holding ALJ improperly concluded claimant's testimony was not credible based on absence of treating physician's opinion claimant was disabled). Brown presented to Dr. Reddy, a treating physician, on October 29, 2014, for the stated purpose of obtaining disability forms. (*Id.* at 273-75). Dr. Reddy noted he was "[u]nable to do any further workup," and there are no disability forms completed by Dr. Reddy in the record. (*Id.* at 275). Under these circumstances, Dr. Reddy's silence is equally susceptible to competing inferences regarding his opinion of Brown's degree of impairment. Therefore, the ALJ's reliance on the absence of a treating physician's opinion regarding disability to discredit Brown's testimony regarding his pain was in error.

### 4. Objective Medical Evidence & Recommended Treatment

The ALJ noted the record of the one instance Brown sought medical treatment for the impairments at issue during the relevant period documents normal neurological and musculoskeletal examinations and does not document a recommendation Brown undergo a surgical procedure, receive steroid injections, or take pain medication, thereby suggesting Brown's symptoms are not as severe as alleged.  (*Id.* at 23, 25).

The nature of treatment a claimant receives for his symptoms is an appropriate consideration in evaluating those symptoms.  *See* 20 C.F.R. §§ 404.1529(c)(3)(iv) & (v), 416.929(c)(3)(iv) & (v) (identifying type and dosage of medication, as well as treatment other than medication, as factors relevant to evaluating symptoms); SSR 16-3p (same); *Draughon v. Comm'r, Soc. Sec. Admin.*, 706 F. App'x 517, 520 (11th Cir. 2017) (holding ALJ properly discredited claimant's testimony regarding his degree of impairment  where claimant received conservative treatment for neck and back pain in the form of physical therapy and medication).

The evidence the ALJ references – the record of Brown's October 29, 2014 visit to Dr. Reddy – does not document a recommendation of surgery or steroid injections.  However, contrary to the ALJ's finding, it does document the recommendation Brown "[c]ontinue medical therapy," which appears to have

consisted of 500 mg tablets of Naproxen (Aleve). (Tr. at 273, 275). To the extent this treatment could be considered conservative, Brown testified he could not get a prescription for narcotic pain medication unless he had surgery and that he had not been to a pain specialist. (*Id.*). Given Brown also testified his lack of insurance affected his ability to obtain medical treatment, the ALJ's error in failing to consider this proferred explanation taints her reliance on the nature of Brown's treatment to discredit his pain testimony, as well.

The consistency of a claimant's testimony regarding his pain or other subjective symptoms with objective medical evidence is also an appropriate consideration in evaluating those symptoms. *See* 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2) (identifying objective medical evidence as relevant to subjective symptoms evaluation); SSR 16-3p (same); *Duval v. Comm'r of Soc. Sec.*, 628 F. App'x 703, 711-12 (11th Cir. 2015) (holding ALJ properly discredited claimant's testimony regarding his degree of impairment where that testimony was not consistent with objective medical evidence); *Hernandez v. Comm'r of Soc. Sec.*, 523 F. App'x 655, 657 (11th Cir. 2013) (same).

However, objective evidence alone is not a sufficient basis on which to discredit a claimant's testimony regarding his pain. *See* 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2) (stating claimant's statements about the intensity, persistence, or limiting effects of his pain or other subjective symptoms will not be

18

rejected solely because objective medical evidence does not substantiate those statements); SSR 16-3p (same); *May v. Comm'r of Soc. Sec. Admin.*, 226 F. App'x 955, 959 (11th Cir. 2007) (noting ALJ cannot reject claimant's statements as to intensity and persistence of symptoms solely because they are not substantiated by objective medical evidence); *Sasnette v. Colvin*, 2015 WL 4459381, at *10-11 (N.D. Ala. July 21, 2015) (holding ALJ's negative credibility finding could not be affirmed because it relied solely on basis objective medical evidence did not substantiate claimant's statements).

Accordingly, the clinical findings (or lack thereof) in the record of Brown's October 29, 2014 visit to Dr. Reddy cannot be the sole basis on which the ALJ discredits Brown's statements regarding the intensity, persistence, and limiting effects of his pain and other subjective symptoms.

## B. Appropriate Remedy

Brown claims that because the ALJ did not set forth clearly articulated reasons supported by substantial evidence for discrediting his testimony, that testimony must be accepted as true. (Doc. 10 at 12). The Commissioner argues the "accept as true" doctrine runs counter to the deference generally accorded to determinations of administrative agencies, violates the "prior precedent" rule, and is not binding precedent or even good law in the Eleventh Circuit. (Doc. 11 at 13-14 n.5).

In *MacGregor v. Bowen*, the Eleventh Circuit held that where an ALJ fails to articulate reasons for discrediting a claimant's testimony regarding his subjective symptoms, that testimony must be accepted as true. 786 F.2d 1050, 1054 (11th Cir. 1986). In *Hale v. Bowen*, the court noted that implicit in *MacGregor's* holding is the requirement that articulated reasons for discrediting a claimant's testimony be supported by substantial evidence. 831 F.2d 1007, 1012 (11th Cir. 1987). Accordingly, the court held that where an ALJ's reasons for discrediting a claimant's testimony are not supported by substantial evidence, that testimony must be accepted as true. *Id.*

The Eleventh Circuit has subsequently declined to apply the holding of *MacGregor* on the ground its decisions preceding *MacGregor* remanded cases upon finding an inadequate credibility determination. *Lawton v. Comm'r of Soc. Sec.*, 431 F. App'x 830, 835 (11th Cir. 2011) (citing *Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984); *Wiggins v. Schweiker*, 679 F.2d 1387, 1390 (11th Cir. 1982)); *Davis v. Comm'r of Soc. Sec.*, 449 F. App'x 828, 833 n.1 (11th Cir. 2011) (citing *Wiggins*); *see also Cohen v. Office Depot, Inc.*, 204 F.3d 1069, 1072 (11th Cir. 2000) (explaining that where two Eleventh Circuit panel decisions are in conflict, the earliest in time controls). On the persuasive authority of *Lawton* and *Davis*, remand is the appropriate remedy for the ALJ's error in evaluating Brown's testimony regarding his pain. *See also Iheanacho*, 2018 WL 4680173, at *2

(remanding case after concluding ALJ's negative credibility finding was not supported by substantial evidence).

Moreover, because Brown's first argument merits remand for further consideration, it is not necessary to address Brown's remaining arguments. *See id.* at *2 n.1 (determining it was unnecessary to address remaining issues raised on appeal after concluding ALJ's negative credibility finding was not supported by substantial evidence); *Ross v. Comm'r of Soc. Sec.*, 2013 WL 5236680, at *7 n.2 (M.D. Fla. Sept. 17, 2013) (declining to address claimant's argument ALJ lacked good cause to give less than significant weight to medical opinion after concluding independent error required remand).

## V. <u>Conclusion</u>

Having reviewed the administrative record and considered all of the arguments presented by the parties, the undersigned find the Commissioner's decision is not in accordance with applicable law or supported by substantial evidence. Therefore, the decision is due to be reversed and remanded for further consideration. A separate order will be entered.

**DONE** this 21st day of March, 2019.

*Staci G. Cornelius*
STACI G. CORNELIUS
U.S. MAGISTRATE JUDGE